# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sidney I. Schenkier | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1436 | **DATE** | 6/13/2001 |
| **CASE TITLE** | M.S. Distributing Company vs. Web Records, Inc., et al | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER ATTACHED MEMORANDUM OPINION AND ORDER. Plaintiff's motion for summary judgment [doc. # 22] is granted in part and denied in part. At the status conference set for 06/21/01, the parties are to present a plan for the completion of discovery in the case. At that conference, the Court will set a final discovery schedule.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| ✓ | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

number of notices

JUN 13 2001
date docketed

6/13/2001
date mailed notice

JJK
mailing deputy initials

JJK courtroom deputy's initials

FB-7
FILED FOR DOCKETING

01 JUN 13 AM 8: 08

Date/time received in central Clerk's Office

**Document Number**

45

M.S. DISTRIBUTING CO.,          )
a corporation,                   )
                                 )          **DOCKETED**
        Plaintiff,               )
                                 )          JUN 13 2001
vs.                              )          No. 00 C 1436
                                 )
WEB RECORDS, INC., a corporation; )          Magistrate Judge Schenkier
ILENE BERNS; and BRIAN JACKSON,  )
                                 )
        Defendants.              )

## MEMORANDUM OPINION AND ORDER

M.S. Distributing Company ("M.S. Distributing") has filed this diversity action seeking

recovery from Web Records, Inc. ("Web") for breach of contract (Count I), and from Brian Jackson

and Ilene Berns on the theory that they personally guaranteed payment of certain amounts due and

owing from Web (Count II). Despite receiving service of process, Web declined to respond to the

complaint and, accordingly, a default judgment has been entered in favor of M.S. Distributing and

against Web in the amount of $650,311.79.

However, that judgment was of little comfort to M.S. Distributing, inasmuch as all parties

agree that Web is insolvent. Accordingly, M.S. Distributing continues to press its efforts to recover

against Mr. Jackson and Ms. Berns. M.S. Distributing alleges that pursuant to guarantees signed by

Mr. Jackson and Ms. Berns in their personal capacities, they are jointly and severely liable for

$438,680.11 of the debt (now judgment) unpaid by Web, along with the costs of this suit.[1] Mr.

Jackson and Ms. Berns each have answered the complaint, and they deny that they personally

---

[1] This is the amount alleged in M.S. Distributing's summary judgment papers, about which there is no dispute. That number reflects a slight revision of the amount ($455,240.35) alleged in the complaint (Compl. ¶ 18A, at 5).

guaranteed payment of any amounts due and owing by Web. In addition, Mr. Jackson and Ms. Berns assert a number of affirmative defenses, including (a) the claim that any guarantees that they signed secured only collection and not payment, and that M.S. Distributing therefore may not recover on the guarantees because M.S. Distributing has not yet exhausted its efforts to recover from Web, and (b) various defenses that Web might assert (but did not assert) in response to M.S. Distributing's breach of contract claim.

Presently before the Court is M.S. Distributing's motion for summary judgment (doc. # 22).[2] In its motion, M.S. Distributing argues that judgment is appropriate because the undisputed facts establish that Mr. Jackson and Ms. Berns personally guaranteed certain payments; that pursuit of a remedy against Web is not required because the guarantees were guarantees of payment and not collection; and that M.S. Distributing is entitled to judgment in the full amount sought, $438,680.11, because, as mere guarantors, Mr. Jackson and Ms. Berns may not assert as setoffs defenses of Web to the contract claim. For the reasons set forth below, M.S. Distributing's motion is granted in part and denied in part. The Court finds that the undisputed facts establish that Mr. Jackson and Ms. Berns personally guaranteed payment of certain debts to be incurred by Web, and that M.S. Distributing is not required under that guarantee to pursue further remedies against Web as a precondition to recovering against Mr. Jackson and Ms. Berns. However, the Court finds that Mr. Jackson and Ms. Berns may assert as setoffs to payment defenses that Web could have asserted to M.S. Distributing's contract claim. As a result, to the extent that M.S. Distributing's motion seeks a judgment of $438,680.11, the motion must be denied because there are material, disputed facts

---

[2]Pursuant to 28 U.S.C. § 636(c), on March 8, 2001, the case was assigned to this Court pursuant to the consent of the parties to have a magistrate judge issue all rulings in the case, including the entry of final judgment (doc. ## 37-38).

concerning what setoffs, if any, Mr. Jackson and Ms. Berns may establish to reduce or eliminate that amount.

## I.

Summary judgment is proper if the record shows that there is no genuine issue as to any material fact, and that the moving parties are entitled to judgment is a matter of law. Fed. R. Civ. P. 56(c). A genuine issue for trial exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249-50; *see also Flipside Productions, Inc. v. Jam Productions, Ltd.*, 843 F.2d 1024, 1032 (7th Cir.), *cert. denied*, 488 U.S. 909 (1988).

In deciding a motion for summary judgment, the Court must view all evidence in the light most favorable to the nonmoving party, *Valley Liquors, Inc. v. Rendfield Importers, Ltd.*, 822 F.2d 656, 659 (7th Cir.), *cert. denied*, 484 U.S. 977 (1987), and must draw all reasonable inferences in the nonmovant's favor. *Santiago v. Lane*, 894 F.2d 218, 221 (7th Cir. 1990). "A Court's obligation to draw all reasonable inferences in favor of a nonmoving party, however, does not require that Court to stretch existing evidence to reach conclusions or bolster arguments it could not otherwise support." *Frost National Bank v. Midwest Autohaus, Inc.*, 241 F.3d 862, 2001 WL 175342, *6 (7th Cir., Feb. 23, 2001). Mere conclusory assertions, unsupported by specific facts, are not sufficient to defeat a proper motion for summary judgment. *Bragg v. Navistar International Transportation Corp.*, 164 F.3d 373, 377 (7th Cir. 1998); *First Commodity Traders, Inc. v. Heinhold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir. 1985).

Rule 56(c) authorizes a Court to issue summary judgment on the issue of liability alone, even where there is "a genuine issue as to the amount of damages." In addition, Rule 56(d) provides that if summary judgment cannot be rendered upon the whole case or for all the relief asked, the Court nonetheless may "ascertain what material facts exist with substantial controversy and what material facts are actually and in good faith controverted." In so doing, Rule 56(d) "serves the salutary purpose of allowing a Court to see to it that the expenditure of time by the parties and the Court on a failed summary judgment motion has not been in vain." *Kinesoft Development Corp. v. Softbank Holdings, Inc.*, 99 C 7428, 2000 WL 1898577, at *6 (N.D. Ill., Dec. 20, 2000); *see also Capital Records, Inc. v. Progress Record Distrib.*, 106 F.R.D. 25, 29 (N.D. Ill. 1985).

## II.

The following facts are material and without genuine dispute. M.S. Distributing is an Illinois corporation with its principal place of business in Illinois (Pl.'s Rule 56.1(a)(3) Statement ("Pl.'s Facts"), ¶ 4). Until recently, M.S. Distributing was engaged in the business of distributing phonographic records and tapes (*Id.*, ¶ 4 and Exhibit A, thereto). Web, a Tennessee corporation with its principal place of business in Tennessee, was engaged in the business of acquiring and producing master recordings and manufacturing phonographic records and tapes (Pl.'s Facts, ¶ 1 and Ex. A thereto). Defendants Jackson and Berns are married and are citizens of Florida (although Ms. Berns now maintains a primary residence in California) (Pl.'s Facts, ¶¶ 2-3). Mr. Jackson and Ms. Berns are both shareholders of Web; in addition, Mr. Jackson serves as president of Web, and Ms. Berns serves as Web's chairman and is also an officer of the corporation (*Id.*).

Web was first incorporated on February 17, 1998, with a capitalization of $2,000.00 (Pl.'s Facts, ¶¶ 12, 28). Shortly thereafter, on or about April 6, 1998, Web and M.S. Distributing entered

into a Distribution Agreement (Pl.'s Facts, ¶ 12 and Ex. A thereto). Pursuant to the Distribution Agreement, M.S. Distributing was required to buy records and tapes from Web (at prices established in the agreement), and then to resell those items to retailers (Pl.'s Facts, ¶ 15 and Ex. A, ¶ 7). In addition, under the Distribution Agreement, M.S. Distributing was required to make certain other payments to Web. *First*, the Distribution Agreement provided that upon execution of the Agreement, M.S. Distributing would advance to Web the sum of $250,000; sixty days after receiving Web's initial master recording, M.S. Distributing was required to advance to Web an additional sum of not less than $250,000 (either as an additional advance or as monies due under the Agreement for records purchased by M.S. Distributing for resale) (Pl.'s Facts, ¶¶ 23-24 and Ex. A, ¶ 8(b)). *Second*, the Distribution Agreement required M.S. Distributing to pay Web's "duplication costs," which were the costs Web incurred in having a third-party multiply (or "press") a single recording into thousands of copies for retail sale (Pl.'s Facts, ¶ 25 and Ex. A, ¶ 8(b)).

The Distribution Agreement provided that the records purchased by M.S. Distributing could be returned to Web for full credit or refund (Pl.'s Facts, ¶ 16 and Ex. A, ¶ 9). In addition, the Agreement provided that Web would fully repay M.S. Distributing for the advances and payment of duplication costs, pursuant to a specified formula (Pl.'s Facts, ¶ 26 and Ex. A, ¶ 8(a)(b)). The Agreement provided that M.S. Distributing would have the right to apply monies due to Web as payment for records to recoup all duplication costs, and then seventy percent of the remaining amounts due to Web as payment for records to recoup advances (*Id.*).

The Distribution Agreement anticipated the possibility that under this formula, M.S. Distributing would not be able to fully recoup from Web the advances and duplication payments. The Distribution Agreement thus provided that "Ilene Berns and Brian Jackson shall jointly and

severely guarantee the repayment of any portion of such advance and duplication payments not otherwise recouped by Distributor [M.S. Distributing], and they are signing this Distribution Agreement solely to evidence this guarantee" (Pl.'s Facts, Ex. A., ¶ 8(b)(2)). The Agreement further provided that each party would indemnify the other "against any damages and costs, including lawyer and litigation costs, resulting from either party's violation of its representations, warranties or obligations hereunder" (Pl.'s Facts, Ex. A, ¶ 16).

The signature block of the Agreement reads as follows:

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

WEB RECORDS, LABEL          M.S. DISTRIBUTING CO.,  DISTRIBUTOR

By: _____          By: _____
      Ilene Berns                                       Executive Vice President

By: _____
      Brian Jackson

(Pl.'s Facts, Ex. A, at page 12). It appears that M.S. Distributing Company drafted the Agreement (Pl.'s Facts, Ex. G); but it is undisputed that Web, Mr. Jackson and Ms. Berns had a lawyer review the Distribution Agreement before it was signed (Pl.'s Facts, ¶ 27).

In April 1998, pursuant to Paragraph 8(b) of the Distribution Agreement, M.S. Distributing made an initial advance to Web in the amount of $250,000 (Pl.'s Facts, ¶ 23). Thereafter, pursuant to Paragraph 8(b) of the Distribution Agreement, M.S. Distributing paid duplication costs of Web in the amount of $188,680.11 (Pl.'s Facts, ¶ 25). By the Fall of 1999, Web had ceased doing

business altogether (Pl.'s Facts, ¶ 19). There is no dispute that although Web has not filed for bankruptcy, it is insolvent (Defs.' Local Rule 56.1(b)(3)(B) List of Additional Facts, ¶ 28).[3]

On March 8, 2000, M.S. Distributing filed this lawsuit, joining Web, Mr. Jackson and Ms. Berns as co-defendants. Despite the default judgment entered against Web, M.S. Distributing has not recovered any of the $438,680.11 in advances and duplication payments from Web (Pl.'s Facts, ¶ 33).[4]

## III.

With this factual background in mind, the Court turns first to the question of whether Mr. Jackson and Ms. Berns entered into personal guarantees enforceable by M.S. Distributing. There is not (and there cannot be) any genuine dispute that Paragraph 8(b)(2) contains a guarantee for the benefit of M.S. Distributing. However, Mr. Jackson and Ms. Berns assert that there is a genuine factual dispute concerning whether they signed the Distribution Agreement only as corporate

---

[3]The affidavit cited by defendants in support of this additional fact do not state that Web is insolvent and is in bankruptcy. However, M.S. Distributing does not challenge that assertion and, to the contrary, in its reply memorandum accepts that contention for purposes of this motion (Pl.'s Reply Mem. 14-15). Accordingly, the Court does so as well.

[4]In opposing summary judgment, Mr. Jackson and Ms. Berns, pursuant to Local Rule 56.1(b)(3)(B), submitted a list of additional facts that they submit require the denial of summary judgment. Those additional facts relate principally to complaints that Mr. Jackson and Ms. Berns raise concerning M.S. Distributing's performance of its obligations to Web under the Distribution Agreement. M.S. Distributing disputes those additional facts, and argues that many of them should be stricken. However, the Court finds that to the extent these additional facts truly are "additional" (and do not merely repeat Mr. Jackson's and Ms. Berns' denial of facts asserted by M.S. Distributing), they are not material to the outcome of the motion. The additional alleged facts concerning M.S. Distributing's lack of performance would be relevant to the question of what setoff, if any, those defendants may have to M.S. Distributing's claim under the guarantee; those additional facts are not material to the question of whether Mr. Jackson and Ms. Berns may step into Web's shoes and assert those claims as a setoff. Moreover, while M.S. Distributing has argued in its briefs that Mr. Jackson and Ms. Berns have not offered facts sufficient to establish a setoff (Pl.'s Reply Mem. 2-3), during proceedings in open court on March 21, 2001, plaintiff withdrew that assertion in light of the fact that discovery on those affirmative defenses is at a preliminary stage.

representatives of Web, or instead in their personal capacities. For the reasons set forth below, the Court rejects that contention.[5]

Under Illinois law, a guarantee is interpreted under general principles of contract construction. *Bank of America National Trust and Savings Association v. Schulson*, 714 N.E.2d 20, 24 (Ill. App. Ct., 1ˢᵗ Dist. 1999). An unambiguous contract must be enforced as written. *Bank of America*, 714 N.E.2d at 24; *see also LaSalle National Bank v. Service Merchandise Co.*, 827 F.2d 74, 78 (7ᵗʰ Cir. 1987) ("if the language of the contract unambiguously provides an answer to the question at hand, the inquiry is over"). Only if a contract is ambiguous may the Court look beyond its four corners, and consider extrinsic evidence. *See, e.g., Moore v. Lomas Mortgage U.S.A.*, 796 F.Supp. 300, 302-03 (N.D. Ill. 1992). However, in no event may extrinsic evidence be used to change the meaning of the Agreement. *Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (Ill. S.Ct. 1999).

The question of whether a contract is ambiguous is a matter of law to be determined by the Court. *Lenzi v. Morkin*, 452 N.E.2d 667, 669 (Ill. App. Ct., 1ˢᵗ Dist. 1983); *Bank of America*, 714 N.E.2d at 24. The contract "is not rendered ambiguous simply because the parties do not agree upon its meaning." *FDIC v. W.R. Grace & Co.*, 877 F.2d 614, 621 (7ᵗʰ Cir. 1989), *cert. denied*, 494 U.S. 1056 (1990) (quoting *Reynolds v. Coleman*, 527 N.E.2d 897, 903 (Ill. App. Ct., 1ˢᵗ Dist. 1988)). Rather, a contract is ambiguous only if its terms are "reasonably and fairly susceptible to more than

---

[5]There is no dispute that this case properly is within the diversity jurisdiction of the Court pursuant to 28 U.S.C. § 1332(a): the plaintiff is a citizen of a different state from all the defendants, and the amount in controversy exceeds $75,000 (Pl.'s Facts, ¶¶ 5-6). Defendants do not dispute that the Court has personal jurisdiction over them and that venue is proper in this district (Pl.'s Facts, ¶¶ 8-11). Moreover, there appears to be no dispute that Illinois law applies in this case (Pl.'s Facts, ¶ 7), as is clear both from the choice of law provision in the Distribution Agreement (Pl.'s Facts, Ex. A, ¶ 20) and by virtue of the fact that Mr. Jackson and Ms. Berns apparently traveled to Illinois to negotiate the Distribution Agreement (Pl.'s Facts, ¶ 8).

one meaning." *Lenzi*, 452 N.E.2d at 669; *see also Bank of America*, 714 N.E.2d at 24. In making

that determination, the Court "must construe the contract as a whole, reading each term in light of

the others," and must seek to interpret the contract in a manner that "gives effect to all its

provisions." *Bank of America*, 714 N.E.2d at 24. *See also Moore*, 796 F. Supp. at 305; *Lukasik v.

Riddel, Inc.*, 452 N.E.2d 55, 60 (Ill. App. Ct., 1st Dist. 1983).

      Under these well-established principles of contract construction, the Court finds that the

Distribution Agreement unambiguously sets forth a personal guarantee by Mr. Jackson and

Ms. Berns for advance and duplication payments not recouped by M.S. Distributing.

Paragraph 8(b)(2) expressly provides that Mr. Jackson and Ms. Berns "shall jointly and severally

guarantee the repayment of any portion of such advance and duplication payments not otherwise

recouped by [M.S. Distributing]." For a guarantee to be "joint and several," there must be more than

one guarantor. *See* BLACK'S LAW DICTIONARY at 842 (7th ed. 1999) (defining joint and several as

apportionable "among two or more parties"). Thus, reading the guarantee as being provided only

by Web would be inconsistent with the reference to a "joint and several" guarantee.

      Paragraph 8(b)(2) further states that those individuals were signing the Distribution

Agreement "solely to evidence this guarantee." And each of them indisputably signed the

Distribution Agreement. Although the signatures appear under the space provided for Web,

Mr. Jackson and Ms. Berns each signed their names without specifying any corporate title or identity.

Applying the principle that the terms of the Distribution Agreement should be read so as not to

render any of them superfluous, the Court finds that Mr. Jackson and Ms. Berns signed the

Agreement in a dual capacity: they signed the Distribution Agreement in their official capacities so

as to bind Web to all aspects of the Distribution Agreement, but then also signed in their individual capacities so as to bind them personally to the guarantee portion of the Distribution Agreement.

While Mr. Jackson and Ms. Berns argue that they could not have signed the Agreement in this dual capacity, in *Railway Express Agency, Inc. v. Greenberg*, 92 C 6383, 1995 WL 753908 (N.D. Ill., Dec. 8, 1995), the district court held otherwise under circumstances very similar to those present here. In that case, the defendant was vice president of United Model. United Model ordered a shipment of product from plaintiff Railway Express Agency ("REA"), and a credit application by United Model stated that "the undersigned has read and agrees to the terms and conditions of this contract set forth hereon and further personally guarantees all debts incurred in the name of the firm." The signature block then set forth the name "United Model," and under that name provided several signature blocks, on one of which Mr. Greenberg placed his signature without a corporate title next to it. United Model filed for bankruptcy, and REA sought summary judgment against Mr. Greenberg, as a guarantor, for amounts due and unpaid by United Model. REA sought summary judgment on that claim, and in opposition, Mr. Greenberg argued that summary judgment could not be granted because the agreement was ambiguous as to whether he had signed it personally or in his official capacity as vice president of United Model.

The district court rejected that argument. The court acknowledged the general rule that "where the language of the body of the guarantee conflicts with the apparent representation by the officer's signature of the capacity in which he signed, an issue of fact as to the agent's intent rises." 1995 WL 753908, *4. However, the court found no conflict between the body of the guarantee and the signature block, because "the language of the contract explicitly creates two separate obligations – an obligation on the principal to perform the agreement and a separate obligation on the agent to

10

'personally guarantee[ ] all that is incurred in the name of the firm." 1995 WL 753908, *5. The Court reasoned that an agreement which provides for "two obligations stemming from the single signature is not ambiguous." *Id.*

This Court finds the reasoning of *Railway Express Agency* persuasive and applicable here. The Court disagrees with defendants' argument that the *Railway Express Agency* opinion turns on the placement of the guarantee language directly above the signature block (*see* Defs.' Mem. at 10). In any event, the location of the guarantee language in relation to the signature block is of little moment here, where Mr. Jackson and Ms. Berns admitted that they consulted an attorney before signing (*see* Pl.'s Facts, ¶ 27 and Ex. G thereto).

Moreover, the Court finds that the cases relied upon by defendants – such as *Wottowa Insurance Agency, Inc. v. Bock*, 472 N.E.2d 411 (Ill. S. Ct. 1984) and *Addison State Bank v. National Maintenance Management, Inc.*, 529 N.E.2d 30 (Ill. App. Ct. 2d Dist. 1988) (Defs.' Mem. 9-10) – are not inconsistent with *Railway Express Agency*. In *Wottowa* and *Addison*, the officers of the corporations signed guarantees in signature blocks that identified the officer's corporate affiliation, which those courts interpreted as evidence of an intent to sign the guarantee in a corporate rather than individual capacity. By contrast, here Mr. Jackson and Ms. Berns signed the Distribution Agreement without listing their corporate titles, a fact that the court in *Railway Express Agency* found significant in distinguishing *Wottowa* and *Addison*. 1995 WL 753908, *5. In addition, in *Wottowa* and *Addison*, the corporate officers both signed guarantee agreements that were separate from the underlying contract. Thus, in those cases, a signature with the individual's corporate affiliation next to it created an ambiguity as to whether the person was signing individually or on behalf of the corporate entity. In this case, by contrast, the underlying contract and the guarantee agreement were

encompassed within the same document signed by Mr. Jackson and Ms. Berns. Thus, as in *Railway Express Agency*, the signature block does not create any conflict or ambiguity with the body of the Agreement: rather, fairly read, the signature block reflects that these individuals signed on behalf of Web with respect to the underlying contract, and in their own individual capacities with respect to the guarantee.

In so holding, the Court is mindful that Mr. Jackson and Ms. Berns deny, on oath, that they entered into the guarantee agreement in their individual capacities. But those denials do not create a genuine dispute of material fact for two reasons. *First*, because the Court has found the guarantee agreement to be unambiguous, extrinsic evidence of the parties' intent is inadmissible. *LaSalle National Bank*, 827 F.2d at 78. *Second*, in any event, the Court could consider extrinsic evidence only to resolve any ambiguity, and not to change the language in the agreement. *Air Safety*, 706 N.E.2d at 884. Here, as explained above, to accept Mr. Jackson and Ms. Berns' assertion that they did not sign the agreement individually, but only on behalf of Web, would fly in the face of Paragraph 8(b)(2), which indicates unequivocally that those individuals would jointly and severely guarantee repayment of certain debts of Web. In these circumstances, Mr. Jackson and Ms. Berns' attempt to contradict this language does not create a triable issue. *See W.R. Grace & Co.*, 877 F.2d at 621 (a contract "is not rendered ambiguous simply because the parties do not agree upon its meaning").

Thus, the Court holds that the Distribution Agreement contains an individual guarantee by Mr. Jackson and Ms. Berns to pay M.S. Distributing those advances and duplication payments that M.S. Distributing does not recoup from Web.[6]

## IV.

Defendants argue that even if they personally guaranteed payment of the advances and duplication costs not recouped from Web, M.S. Distributing cannot recover on the guarantees because it has not yet exhausted its remedies against Web (Defs.' Mem. 2, 13). The Court disagrees.

Defendants' argument is based on the distinction between guarantees of "payment" and guarantees of "collection." Under Illinois law, a guarantee of payment "require[s] the payment of a debt immediately when due if the debtor fails to pay," whereas a guarantee of collection "require[s] payment only after the lender first uses all legal means to collect payment from the debtor." *Bank of America*, 714 N.E.2d at 24 (citing *Beebe v. Kirkpatrick*, 152 N.E. 539 (Ill. S. Ct. 1926)). Mr. Jackson and Ms. Berns argue that the guarantee set forth in the Distribution Agreement is one of collection rather than payment. But defendants' brief merely asserts the point, without explaining what leads them to interpret the Distribution Agreement in that fashion. Under well settled law, that kind of "perfunctory" and undeveloped argument[]" is waived. *United States v. Berkowitz*, 927 F.2d

---

[6]In light of this ruling, the Court need not address plaintiff's alternative argument that even absent a written agreement, Mr. Jackson and Ms. Berns made oral representations guaranteeing payment of advances and duplicating costs made for Web, or the defendants' argument that any such oral representations are not enforceable by operation of the Statute of Frauds. However, the Court notes that it does not appear that the Statute of Frauds would bar enforcement of any oral promise here, because the Statute of Frauds does not apply in a situation where there was no preexisting debt at the time of the alleged guarantor's assurances. *Publishers Advertising Associates, Inc. v. The Wessel Co., Inc.*, 747 F.2d 1076, 1080 (7th Cir. 1984). Here, the undisputed facts show that the debt that Mr. Jackson and Ms. Berns allegedly guaranteed orally (the advance payment and the duplication costs) were not incurred until after the Distribution Agreement was signed.

1376, 1384 (7th Cir. 1991); *see also Anderson v. Hale*, 00 C 2021, 2001 WL 417991, * 11 n.6 (N.D. Ill., Apr. 23, 2001).

However, the Court does not base the rejection of defendants' argument solely on this waiver point. Using the principles of contract construction set forth above, an independent review of the Distribution Agreement leads the Court to conclude that it unambiguously sets forth a guarantee of payment rather than collection.

In reaching this conclusion, the Court begins with the observation that the language of the Distribution Agreement specifically speaks to a guarantee of "repayment" and not of "collection." The words used in a contract are to be given their "ordinary and natural meaning" absent explicit language to the contrary, *LaSalle National Trust, N.A. v. ECM Motor Co.*, 76 F.3d 140, 144 (7th Cir. 1996) – and here, there is no explicit language in the Distribution Agreement indicating that the term "repayment" should be read to mean "collection." Moreover, the guarantee provision does not condition the guarantors' repayment obligation on any suit or other collection action by M.S. Distributing. Rather, the Distribution Agreement clearly states that the guarantors' obligation is triggered by the unavailability of funds collected pursuant to Paragraph 8(a) of the Distribution Agreement sufficient to recoup the advance and duplication payments – which indisputably has occurred here (*see* Pl.'s Facts, ¶¶ 30, 32-33). The Distribution Agreement does not set forth any other preconditions to recovery under the guarantee.

Accordingly, the Court finds as a matter of law that Paragraph 8(b) of the Distribution Agreement provides for a guarantee of payment rather than collection, and thus does not require

14

M.S. Distributing to exhaust remedies against Web as a precondition to seeking recovery on the guarantee.[7]

## V.

We now turn to the question of whether the defendants, in opposing M.S. Distributing's efforts to recover on the personal guarantees, may assert as affirmative defenses (or, more accurately, setoffs) defenses to payment that Web could have asserted. M.S. Distributing claims that defendants may not do so, relying on the general rule that a surety or guarantor "may not plead the principal's independent cause of action as a defense against a creditor." 10 S. WILLISTON ON CONTRACTS § 1214, at 716 (3rd ed. 1967). Defendants concede that this is the general rule, but argue that this general rule yields in three specific circumstances, each of which they assert is present here: (a) where the principal debtor is insolvent, (b) where the principal debtor has consented to the guarantor raising the principal's defenses, and (c) where the principal and the guarantor are sued together. *See, e.g., Wallace Hardware Co., Inc. v. Abrams*, 223 F.3d 382, 402 (6th Cir. 2000) (applying Tennessee law).

The Illinois Supreme Court has not considered the question of whether any or all of these exceptions apply under Illinois law. Thus, the Court must endeavor to predict how the Illinois Supreme Court would resolve the question, and to apply that rule. *See Allen v. Transamerica Ins. Co.*, 128 F.3d 462, 466 (7th Cir. 1997); *Green v. J.C. Penney Auto Insurance Co.*, 806 F.2d 759 (7th Cir. 1986). "Where the Illinois Supreme Court has not ruled on an issue, decisions of the Illinois

---

[7]The Court also observes that given defendants' admission that Web is insolvent, any efforts by M.S. Distributing to collect against Web likely would be futile. Thus, even if the Distribution Agreement provided for a guarantee of collection and thus ordinarily would require exhaustion of remedies against Web prior to seeking recovery on the guarantee, that would not be the case here, as the law would not require M.S. Distributing to engage in an act that is futile. *See Kinesoft Dev. Corp. v. Softbank Holding Inc.*, ____ F.Supp.2d ____, 2001 WL 184885 (N.D. Ill., Feb. 16, 2001).

Appellate courts control, unless there are persuasive indications that the Illinois Supreme Court would decide the issue differently." *Allen*, 128 F.3d at 466. For the reasons that follow, the Court believes that the Illinois Supreme Court would recognize each of the exceptions urged by defendants.

*First*, these exceptions have been generally recognized by commentators, as well as a number of court decisions. *See* L. SIMPSON, HANDBOOK ON THE LAW OF SURETYSHIP § 70, at 324-25 (1950); RESTATEMENT OF SECURITY § 133(2), at 360, 362-63 (1941); *see also, Wallace Hardware Co.*, 223 F.3d at 402; *Schenley Affiliated Brands Corp. v. Mar-Sale, Inc.*, 703 F. Supp. 744, 746 (N.D. Ill. 1989); *First National Bank of Wheaton v. Adams*, 86 C 706, 1987 WL 17134, *2 (N.D. Ill., Sept. 17, 1987); *The Continental Group, Inc. v. Justice*, 536 F. Supp. 658, 661 (D. Del. 1982).

*Second*, Illinois appellate case law (albeit scant) is consistent with the exceptions urged by Mr. Jackson and Ms. Berns. In *Halliburton Co. v. Marlen*, 506 N.E.2d 751, 755 (Ill. App. Ct., 5th Dist. 1987), the guarantor was permitted to assert as a setoff a claim of the principal, in a situation where the principal was insolvent. In *Luther v. Mathias*, 211 Ill. App. 596, 1918 WL 1972, * 2 (Ill. App. Ct., 2nd Dist. 1918), the court held that a claim of the principal was available to the surety as a setoff, upon proof of consent by the principal – which in that case was provided by the fact that the plaintiff sued both the principal and the surety, and both asserted a setoff defense. And, in *Graff v. Kahn*, 18 Ill. App. 485, 1886 WL 5258, * 2 (Ill. App. Ct., 1st Dist. 1886), the court held that a guarantor who is sued alone, without the principal being joined, may not plead a principal's defense *unless* "he shows that the demand has been assigned to him or that he makes the setoff with the concurrence and consent of his principal, and such concurrence and consent must be evidenced in such manner as to bind the principal."

*Third*, these exceptions fairly accommodate both the interest of ensuring that the claims of the principal are not needlessly squandered, "since the guarantor may not be in the best position to assert them," *Wallace Hardware Co.*, 223 F.3d at 402, and the interest of insuring that the guarantor is not held to a liability beyond that of the principal debtor. *Id.*, at 401; *see also Halliburton*, 506 N.E.2d at 755 (recognizing that the "letter for guaranty merely makes defendant [guarantor] responsible only for the sums owed to plaintiff by [the principal]"). The three generally-recognized exceptions that are all protect the guarantor from liability that exceeds the principal's debt, without exposing the principal to the risk that its defenses would be undervalued (such as, for example, in a situation where the principal might have a claim worth $1 million, but where the guarantor could not use it as more than a $500,000 setoff). Where the principal and the guarantor both are joined as defendants, the principal can protect its interest by asserting the defense itself if it so chooses. Where the principal is insolvent, and has not otherwise sold or lost the right to the defense, there is no harm in allowing the guarantor to assert a defense that the principal will not be able to assert in any event. To the contrary, in that situation, it would be "inequitable to deprive the guarantor of what may be a valid setoff between the creditor and principal debtor when the guarantor would have little or no recourse against the principal debtor, as is the case when the principal debtor is insolvent." *Schenley*, 703 F. Supp. at 746-47. And, in a situation of consent, there certainly is no harm to the principal in allowing the guarantor to assert the principal's defenses.

The Court finds that the authorities cited by plaintiff do not warrant the conclusion that the Illinois Supreme Court would reject these three exceptions. In *United Air Lines, Inc. v. ALG, Inc.*, 916 F. Supp. 793 (N.D. Ill. 1996), the court – applying Illinois law – refused to allow the guarantor (ALG) to assert the principal debtor's defense that plaintiff had failed to perform on the lease.

However, that case did not turn on any consideration of whether Illinois law would recognize the exceptions discussed above, but rather on the fact that in the guarantee in question, ALG "expressly agreed that if UAL came looking for payment, ALG would not raise any defenses that ALG Trust could have presented." 916 F. Supp. at 795. Likewise, in *Continental Bank, N.A. v. Modansky*, 129 B.R. 159 (N.D. Ill. 1991), the guarantee itself contained language waiving the guarantor's ability to assert defenses of the principal, providing that the guarantor's liabilities include all obligations of the debtor "notwithstanding any right or power of the Debtor or anyone else to assert any claim or defense as to the invalidity or unenforceability of any such obligation, and no such claim or defense shall affect or impair the obligations of the [guarantor]." 129 B.R. at 162.

Moreover, *United Air Lines* and *Modansky* did not present a question of whether an exception would apply where the guarantor and principal debtor both were sued (since in those cases only the guarantor was sued), or whether the "consent exception" would apply (since there was no argument raised that the principal debtor had consented to the guarantor asserting a defense). The *Modansky* court did expressly reject an insolvency exception, based on the concern that because the principal debtor was in bankruptcy, allowing the guarantor to assert the principal's defenses would compromise the ability of the bankruptcy court to fairly allocate the bankrupt assets among all creditors. 129 B.R. at 161-62. But that concern is not present in this case, as it is undisputed that Web is insolvent but is not in bankruptcy.

For these reasons, the Court finds that neither *United Air Lines* or *Modansky* is persuasive authority that Illinois would not recognize the exceptions in question.[8] The Court therefore holds

---

[8] Nor does the Court find persuasive plaintiff's citations to *Midstate Fertilizer Co v. Exchange National Bank of Chicago*, 877 F.2d 1333 (7th Cir. 1989) and *Wiessman v. Weener*, 12 F.3d 84 (7th Cir. 1993). In *Midstate*, the Seventh Circuit held that a guarantor/shareholder had no standing to collect damages against a lender for injury that the lender

that the Illinois Supreme Court would permit a guarantor to assert as a setoff defenses of the principal under any of the following circumstances: (1) where both the principal and the guarantor are sued; (2) where the principal is insolvent (and not in bankruptcy); or (3) where the principal consents to the guarantor's use of the defense. In this case, the undisputed facts show that each of these three exceptions applies.

*First*, plaintiff here sued both the principal (Web) and the guarantors (Mr. Jackson and Ms. Berns). Thus, if Web had been interested in pursuing its defenses, it had the opportunity to do so. The fact that as president of Web, Mr. Jackson has stated on oath that Web is not pursuing any claims against the plaintiff (Pl.'s Facts, ¶ 3), together with the fact that Web took a default judgment rather than defend the case, is strong evidence that Web is not interested in pursuing its defenses and that its interests therefore will not be compromised by allowing the guarantors to assert those defenses as setoffs.

*Second*, it is undisputed that Web is insolvent. This shows that Web lacks the means (and/or the interest) to assert the defenses to plaintiff's claim. Moreover, the undisputed evidence indicates that Web is not in a bankruptcy, and thus we are not presented with a concern that allowing the guarantors to assert the defenses would compromise the ability of the bankrupt estate to do so.

---

allegedly caused to its firm. In *Wiessman*, the Court held that the plaintiff, a shareholder who personally guaranteed corporate debt of AHL was not a real party in interest who could sue the defendants over a failed loan. In each of these cases, the guarantors were not seeking to assert defenses of the principal as a setoff on the guarantee, but instead were seeking to recover affirmatively for damages that the defendants allegedly caused to the principals. Neither of these cases discusses the authorities recognizing exceptions to the guarantor's inability to assert defenses of the principal; neither of the cases addressed the scenario presented here, where the guarantors seek to assert the principal's defenses as a setoff to the guarantor's liability under the guarantee; and neither of these cases purport to apply Illinois law (*Midstate* was a case brought under RICO and the Federal Bankholding Company Act, and while *Wiessman* appears to have been a diversity action, there is no citation to Illinois law).

*Third*, the undisputed evidence indicates that the guarantors have the consent of Web to assert the defenses. The fact that Mr. Jackson, as president of Web, has foresworn any interest of Web in asserting the defenses and is asserting them as guarantor is, in the Court's view, evidence of consent "in such manner as to bind the principal." *Graff*, 1886 WL 5258, *4.

In holding that Mr. Jackson and Ms. Berns may assert defenses of Web in order to setoff any liability under the guarantee, the Court expresses no view concerning whether any of those defenses is meritorious. The parties have recognized that there are fact disputes regarding those defenses that preclude summary judgment (*see* footnote 4, *supra*). However, pursuant to Rule 56(d), the Court specifies that the amount of advances and duplication costs unrecovered – $438,680.11 – is without controversy, and thus is deemed established. Any defenses that Mr. Jackson and Ms. Berns might establish may operate only as a setoff to that liability under the guarantee; these defendants may not assert those defenses as a means of obtaining a recovery from M.S. Distributing.[9]

## CONCLUSION

For the foregoing reasons, M.S. Distributing's motion for summary judgment (doc. # 22) is granted in part and denied in part. The Court holds that Mr. Jackson and Ms. Berns signed the guarantee contained in the Distribution Agreement in their personal capacities; that M.S. Distributing need not exhaust remedies against Web in order to recover on the guarantees; and that under the

---

[9]M.S. Distributing also seeks summary judgment on the claim that it under the Distribution Agreement, is entitled to attorneys' fees incurred in pursuing recovery under the guarantee. We note that, in this respect, plaintiff's motion is inconsistent with the complaint, in which M.S. Distributing seeks attorneys' fees on Count I against Web, but not on the guarantee claim in Count II against Mr. Jackson and Ms. Berns (*compare* Compl. at 4 *with* Compl. at 5). But the Court need not resolve the discrepancy at this time: since the Court has denied summary judgment on M.S. Distributing's claim to recover on the guarantee, the Court will deny summary judgment on the attorneys' fee issue as well, and thus defer the question of whether, if M.S. Distributing recovers all or part of the $438,680.11, it also is entitled to recover attorneys' fees.

guarantee the undisputed facts show that the amount M.S. Distributing has not recouped that is subject to the guarantee is $438,680.11. However, the Court denies M.S. Distributing's motion for summary judgment on its request to recover that amount, as well as its request for attorneys' fees: the Court holds that under Illinois law, Mr. Jackson and Ms. Berns may assert as setoffs to the plaintiff's claim defenses that Web could have asserted, and that the disputed factual record precludes a ruling on summary judgment as to whether those defenses are meritorious.

ENTER:

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: June 13, 2001**