JS6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sidney I. Schenkier | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1436 | **DATE** | 7/30/2003 |
| **CASE TITLE** | M.S. Distributing Co. vs. Web Records, Inc., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION AND ORDER.** M.S. Distributing's bill of costs [doc. # 112] is granted, in the amount of $7,701.79 against Ms. Berns, with $2,664.57 of that amount jointly and severally against Mr. Jackson. M.S. Distributing's motion for prejudgment interest [doc. # 96] is granted in the amount of $87,736.02, and denied insofar as it seeks a greater amount of prejudgment interest. M.S. Distributing's motion for attorneys' fees and non-taxable costs [doc. # 110] is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUL 31 2003 | |
| | Notified counsel by telephone. | | date docketed | 113 |
| | Docketing to mail notices. | | IS | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 7/30/2003 | |
| | | | date mailed notice | |
| JJK | courtroom deputy's initials | | JJK | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

**DOCKETED**
**JUL 31 2003**

| | | |
|---|---|---|
| M.S. DISTRIBUTING CO., a corporation, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | No. 00 C 1436 |
| WEB RECORDS, INC., a corporation; ILENE BERNS; and BRIAN JACKSON, | ) ) ) ) | Magistrate Judge Schenkier |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

On March 21, 2001, this Court granted a default judgment for the plaintiffs (collectively referred to herein as "M.S. Distributing") and against the defendant Web Records, Inc. on Count I of the complaint, awarding damages of $650,311.79 for breach of a Distribution Agreement (doc. ## 40-41). The case continued against the other defendants, Brian Jackson and Ilene Berns, on Count II, which claimed that Mr. Jackson and Ms. Berns were guarantors of a portion of the damages due from Web for breach of the Distribution Agreement. On June 13, 2001, the Court granted partial summary judgment in favor of M.S. Distributing and against Mr. Jackson and Ms. Berns on the guaranty claim (doc. # 45), holding that they were in fact guarantors and that the maximum amount of their liability under the guaranty was $438,680.11. However, the Court found that a judgment in that amount could not be entered against Mr. Jackson and Ms. Berns at that time, because of disputed factual issues concerning potential setoffs that they could assert. On June 7, 2002, Mr. Jackson stipulated to the entry of judgment in the amount of $438,680.11 on the guaranty claim (doc. # 67).

113

On May 13, 2003, after the completion of discovery, the Court granted M.S. Distributing summary judgment against Ms. Berns in the amount of $438,680.11 on the guaranty claim (doc. # 95).

Now that judgment has been entered against Mr. Jackson and Ms. Berns on the guaranty, M.S. Distributing has moved for an award of taxable costs pursuant to Fed. R. Civ. P. 54(d)(1) in the amount of $7,733.24 (doc. # 112); for an award of prejudgment interest (doc. # 96); and for an award of attorneys' fees and non-taxable costs (doc. # 110). Our rulings on these requests are set forth below.

I.

We begin with the request for taxable costs in the amount of $7,733.24, which is unopposed and which thus requires little discussion. Plaintiff seeks to recover its filing fee ($150.00); subpoena and witness fees ($48.00), and fees for process servers ($509.00); court reporter fees for transcripts necessarily obtained for use in the case ($5,672.60); fees for duplication of documents necessarily obtained for use in the case ($1,322.19); and federal express charges ($31.45). Costs are recoverable if they are authorized by statute, and are both reasonable and necessary to the litigation. *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 427 (7th Cir. 2000). The defendants do not contest the necessity or reasonableness of the costs sought. And, the items of cost sought by M.S. Distributing all are recoverable under 28 U.S.C. § 1920 – with one exception.

Section 1920 does not expressly authorize assessment of costs for federal express or other special delivery services. The Seventh Circuit has allowed recovery for delivery charges in awarding fees and costs as a sanction under Fed. R. Civ. P. 11, citing to Section 1920. *Burda v. M. Ecker Co.*, 2 F.3d 769, 778 (7th Cir. 1993). However, *Burda*'s reference to Section 1920 has been characterized as dicta, *see El-Fadl v. Central Bank of Jordan*, 163 F.R.D. 389, 390 (D.D.C. 1995), and several

decisions within this district after *Burda* have held that federal express and other special delivery charges are not expressly covered by Section 1920 and thus are not recoverable as taxable costs. *Stark, v. PPM America, Inc.*, No. 01 C 1494, 2003 WL 21223268, at *7 (N.D. Ill. May 23, 2003); *Coleman v. ANR-Advance Transportation Co.*, No. 98 C 7599, 2001 WL 477208, at *2 (N.D. Ill. May 4, 2001); *Amati v. City of Woodstock*, Nos. 92 C 20347, 94 C 50235, 1998 WL 299362, at *5 (N.D. Ill. May 27, 1998). We reach the same conclusion, and thus remove from the bill of costs the $31.45 in federal express charges sought by the plaintiff.

Accordingly, we award M.S. Distributing the $7,701.79 in costs against Ms. Berns. M.S. Distributing asks that only a portion of this amount be awarded jointly and severally against Mr. Jackson, on the ground that the rest was incurred only after he had stipulated to the entry of judgment in June 2002. Neither defendant has quarreled with this allocation, and we therefore will adopt it. Accordingly, Mr. Jackson will be jointly and severally liable for $2,664.57 of the costs awarded against Ms. Berns.

## II.

We now turn to M.S. Distributing's motion for an award of prejudgment interest, which in this diversity case is governed by Illinois law. *Allen & O'Hara, Inc. v. Barrett Wrecking, Inc.*, 964 F.2d 694, 695 n.3 (7th Cir. 1992). M.S. Distributing argues that, at a minimum, it is entitled to receive prejudgment interest in the amount of five percent (simple, not compounded), under the Illinois Interest Act, 815 ILCS 205/2, which governs prejudgment interest "for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing." M.S. Distributing claims that it is entitled to recover prejudgment interest beginning as of June 1999, when the

$438,680.11 became due.¹ Using the trigger date of June 1999 and a five percent rate of interest (simple, and not compounded), results in a total of $87,736.02 in prejudgment interest.

Ms. Berns concedes that she is liable for prejudgment interest under the Interest Act (Berns' Resp. at ¶ 5); Mr. Jackson has not responded, and we treat his silence on this point as acquiescence. Thus, all parties agree that M.S. Distributing is entitled to an award of at least $87,736.02 in prejudgment interest. The dispute here is whether M.S. Distributing is entitled to a higher rate of prejudgment interest, and is entitled to have that interest calculated on a compound basis. M.S. Distributing offers two arguments to support its claim that it is entitled to compound interest at prime market rate: one based on a contractual argument, and the other based on an interpretation of the Illinois version of the Section 2-715 of the Uniform Commercial Code ("U.C.C."), codified at 810 ILCS 5/2-715. For the following reasons, we do not find either of those arguments persuasive.

## A.

We begin with the contractual argument, which is based on an interpretation of the Distribution Agreement. Paragraph 16 of the Distribution Agreement states that "[e]ach party indemnifies the other against any damages and costs, including lawyer and litigation costs, resulting from either party's violation of its representations, warranties or obligations hereunder." Citing *Medcom Holding Co. v. Baxter Travenol Labs, Inc.*, 200 F.3d 518, 519-20 (7th Cir. 2000), M.S. Distributing argues that prejudgment interest constitutes "damages or costs" recoverable under this

---

¹We note that the obligation to pay prejudgment interest under the Interest Act is triggered when the amounts due are liquidated or easily computed. *See Campania Management Co., Inc. v. Rooks, Pitts & Poust*, 290 F.3d 843, 853 (7th Cir. 2002). The fact that offsets and other defenses may be asserted to avoid or diminish the liability "do[es] not make a sum actually awarded less ascertainable." *Id.* at 854 (quoting *Ash v. Georgia-Pacific Corp.*, 957 F.2d 432, 439 (7th Cir. 1992)). Thus, the fact that Ms. Berns asserted offsets to the obligation under the guaranty, which were not finally resolved until the Court's May 2003 summary judgment ruling, does not affect the date on which prejudgment interest begins to accrue under the Interest Act.

indemnity provision. Relying on *Medcom*, M.S. Distributing further argues that this contractual agreement allows it to recover prejudgment interest at a rate that is different from that provided in the Interest Act, and that because the contract is silent on the rate of prejudgment interest and how it should be calculated, the Court should apply prime market rate interest on a compounded basis.

In *Medcom*, the court held that "Illinois does not treat 815 ILCS 205/2 as the sole authority for prejudgment interest. Contracting parties may supply their own rule of decision." 200 F.3d at 519. The court further held that "[p]rejudgment interest is an element of complete compensation." *Id.* at 520 (quoting *West Virginia v. United States*, 479 U.S. 305, 310 (1987)). The appeals court explained that because the purpose of an indemnity provision is "to make the wronged party whole to put it in the same position it would have occupied had the other side kept its promise," *id.* at 519, the way to do that is to "provide prejudgment interest at the market rate." *Id.* at 520.

However, for *Medcom* to provide a basis for the increased level of prejudgment interest that M.S. Distributing seeks, Mr. Jackson and Ms. Berns must have agreed to the indemnity provision in the Distribution Agreement. Ms. Berns argues that they did not. Ms. Berns claims that she and Mr. Jackson signed on only to the guaranty, which appears at Paragraph 8(b)(2) of the Distribution Agreement and which states as follows: "Ilene Berns and Brian Jackson shall jointly and severally guarantee the repayment of any portion of such advance and duplication payments not otherwise recouped by [M.S. Distributing], and they are signing this Distribution Agreement solely to evidence this guarantee." M.S. Distributing asserts that by signing the last page of the Distribution Agreement, Mr. Jackson and Ms. Berns each became a "party" to all terms of that agreement, including the indemnity provision of Paragraph 16 – which says that each "party indemnifies the other."

5

We believe that the dispute on this point already has been substantially resolved by the Court's June 2001 summary judgment ruling. *M.S. Distributing Co. v. Web Records, Inc.*, No. 00 C 1436, 2001 WL 685923 (N.D. Ill. June 13, 2001) (hereinafter, cited as *Web I*). In that decision, the Court squarely addressed the question of the capacities in which Mr. Jackson and Ms. Berns signed the Distribution Agreement:

> [T]he Court finds that Mr. Jackson and Ms. Berns signed the [Distribution] Agreement in a dual capacity: they signed the Distribution Agreement in their official capacities so as to bind Web to all aspects of the Distribution Agreement, but then also signed in their individual capacities so as to bind them personally to the guarantee portion of the Distribution Agreement.

*Web I*, 2001 WL 685923, at *5. Applying that finding here, the Court concludes that by signing the Distribution Agreement in their personal capacities in connection with the guaranty, Mr. Jackson and Ms. Berns did not become "parties" to the Distribution Agreement or bind themselves to all of its terms.

That conclusion is consistent with the Paragraph 8(b)(2) of the Distribution Agreement, which states that Mr. Jackson and Ms. Berns signed the agreement "solely to evidence this guarantee." "It is presumed that each part of a contract was inserted deliberately and for a purpose consistent with the overall intention of the parties." *Bank of America Nat'l Trust and Savings Ass'n v. Schulson*, 714 N.E.2d 20, 24 (Ill. App. Ct. 1st Dist. 1999); *see also Martindell v. Lake Shore Nat'l Bank*, 154 N.E.2d 683, 689 (Ill. S. Ct. 1958). The use of the word "solely" plainly limits the liability of the guarantors to the matters specifically addressed in the guaranty clause of the Distribution Agreement – that is, to advance and duplication payments. The guaranty clause makes no reference

to prejudgment interest on those amounts. To accept M.S. Distributing's reading of the contract would read the word "solely" out of the agreement – which, of course, we are not at liberty to do.

In addition, we are not persuaded that the word "party" as used in the indemnity clause of Paragraph 16 can fairly be read to refer to individuals who signed the Distribution Agreement solely as guarantors. Read as a whole, the word "party" as used throughout the Distribution Agreement refers only to M.S. Distributing and Web. For example, the opening paragraph of the Distribution Agreement identifies the Distribution Agreement as being "made...between Web Records ... and M.S. Distributing"; no mention is made of Mr. Jackson or Ms. Berns in their personal capacities. The notice provision contained in Paragraph 17 of the Distribution Agreement says that notices were to be delivered "at the respective addresses of the parties hereto set forth below," identifying only the addresses of Web and M.S. Distributing, or at "such other addresses as may be designated in writing by *either* party" (emphasis added) – with the word "either" suggesting that there were only two parties to the Distribution Agreement, Web and M.S. Distributing. And, the indemnity provision itself states that "*[e]ach* party indemnifies *the other*"(emphasis added) – which, again, suggests that there are only two parties to the indemnity.

Finally, to the extent that one might assert that there is any tension between Paragraphs 8(b)(2) and 16 of the Distribution Agreement, the specific limitations in Paragraph 8(b)(2) (which states that Mr. Jackson and Ms. Berns agreed to sign the Distribution Agreement "solely to evidence ... [a] guarantee" that did not include a commitment to guaranty payment of prejudgment interest) trumps any attempt to treat them generally as "parties" under the agreement. "[W]here one intention is expressed in one provision of a contract and a conflicting intention appears in another provision, full effect should be given to the more principal and specific provision, and the general provision

7

should be subjected to such modification or qualification as the specific provisions make necessary." *Brzozowski v. Northern Trust Co.*, 618 N.E.2d 405, 409 (Ill. App. Ct. 1st Dist. 1995). This rule of construction has special force here, because "under well-established Illinois law, a guarantor is to be accorded the benefit of any doubt which may arise from the language of the contract . . ." *A.D.E., Inc. v. Louis Joliet Bank and Trust Co.*, 742 F.2d 395, 396 (7th Cir. 1984) (quoting *Telegraph Savings & Loan Ass'n v. Guaranty Bank & Trust Co.*, 385 N.E.2d 97, 100 (Ill. App. Ct. 1st Dist. 1978)). The argument advanced by M.S. Distributing contravenes these principles of contract construction, and for this reason as well must be rejected.

Accordingly, the Court holds that by signing the Distribution Agreement in their personal capacities "solely to evidence . . . [the] guarantee" of repayment of advances and duplication payments, Mr. Jackson and Ms. Berns did not become parties to the indemnity provision set forth in Paragraph 16 of the Distributing Agreement. They are therefore not liable for prejudgment interest under that indemnity provision; and, because the guarantee does not extend to prejudgment interest, Mr. Jackson and Ms. Berns are not contractually liable to M.S. Distributing for prejudgment interest.

**B.**

We now turn to M.S. Distributing's attempt to obtain prejudgment interest (compounded) as consequential damages under the Illinois version of Section 2-715 of the U.C.C. The U.C.C. defines "consequential damages" as:

> (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and
>
> (b) injury to person or property proximately resulting from any breach of warranty.

8

810 ILCS 5/2-715. M.S. Distributing cites to *Cole Energy Development Co. v. Ingersoll-Rand Co.*, 913 F.2d 1194, 1202 (7th Cir. 1990), for the proposition that under Article 2-715 recoverable economic loss includes the time value of money. We are unpersuaded by this argument, for two reasons.

1.

We do not agree that the guaranty is covered by the U.C.C. We are mindful that in the past, "[b]oth parties [have] agree[d] that ... the Distributing Agreement, which covers goods and services, is controlled by the Uniform Commercial Code." *M.S. Distributing Co. v. Web Records, Inc.*, No. 00 C 1436, 2003 WL 21087961, at *8 (N.D. Ill. May 13, 2003) (hereinafter, cited as *"Web II"*). But that concession does not answer the specific question of whether the guaranty, which is not itself a transaction in goods or services but is a guaranty of repayment of certain funds expended in connection with a transaction in goods or services, also is controlled by the U.C.C. Neither party has cited authority addressing that specific question, and the Court's independent research has not uncovered Illinois case law on point. However, the few cases from other jurisdictions we have found that address the issue have held that guarantees are not controlled by the U.C.C.

In *American Trading Co., Inc. v. Fish*, 364 N.E.2d 1309 (N.Y. Ct. App. 1977), the defendant had provided a personal guaranty in connection with a contract for the sale of goods. As in the present case, the guaranty clause in *American* was not in a separate, stand-alone document, but was included in the larger contract for the sale of goods. *Id.* at 1310. When the guaranteed party failed to perform the contract, the plaintiff sought to enforce the defendant's guaranty agreement. The defendant argued that the entire agreement was regulated by the U.C.C.; the plaintiff argued that the

9

guaranty was a separate agreement that was not a contract for the sale of goods or services, and therefore did not fall under the U.C.C. The court agreed with the plaintiff:

> Although a narrow reading of the agreement executed by American, Kinematix and defendant may lead one to the conclusion that the "essence" of the transaction is the sale of goods, the writing actually embodies separate undertakings a contract for the sale of goods between American and Kinematix, an obligation to manage the branch office undertaken by defendant, and a guarantee by defendant to American that Kinematix will perform. It is taking far too formalistic an approach to say that all this was merely a sales agreement and that, solely for this reason, defendant's guarantee is subject to the Statute of Limitations applicable to contracts for the sale of goods under subdivision 1 of section 2-725 of the Uniform Commercial Code.

*Id.* at 1311. *See also Star Distributors v. Post Liquors, Inc.*, No. CV 960056867S, 1998 WL 96307, at *5 (Conn. Super. Ct. Feb. 24, 1998) (unpublished opinion) (holding that an "agreement for the guaranty of payment on an underlying debt is not itself a contract for the sale of goods, and is thus not governed by article 2 of the U.C.C.").

We find that the *American* and *Star* decisions reflect a reasonable reading of the U.C.C. We have no reason to believe that the Illinois Supreme Court, were it to address the issue, would adopt a sweeping interpretation of the U.C.C. that would encompass guaranty agreements, which are not themselves transactions in goods or services. Accordingly, we find that, at the threshold, M.S. Distributing has failed to show that the U.C.C. applies to the guaranty agreement.

### 2.

Moreover, even if the U.C.C. governed the guaranty provision, we do not believe that *Cole* may properly be read to hold that Section 2-715 authorizes the recovery of prejudgment interest. In *Cole*, the plaintiff claimed that the defendant manufacturer had breached a warranty in connection with compressors that the plaintiff used to extract natural gas. The plaintiff claimed that it had

10

suffered losses because the subpar performance of the compressors delayed the extraction of the natural gas, and delayed the profit that the plaintiff would have earned from the natural gas that was extracted. Thus, as part of the damages sought, the plaintiff sought interest for the period that the profits were delayed.

In considering this point, the appeals court expressly distinguished the damages that the plaintiff in *Cole* was seeking from prejudgment interest: "[t]he cost to Cole of not having money when it should have is not prejudgment interest, but an actual loss incurred by Cole." 913 F.2d at 1202. The court explained that "[a]lthough the allowance of prejudgment interest is intended to compensate a party for lost interest income over a period of time in which it was entitled to a certain sum of money but did not have use of it, that time period runs from the date of the breach to the date of the judgment." *Id.* However, that was not what the plaintiff in *Cole* had sought. Rather, the plaintiff had sought interest on the profits only for the length of time they were allegedly delayed – and not to the date of judgment. *Cole*, therefore, does not hold that prejudgment interest is available as a remedy under Section 2-715.

Nor are we convinced that the Illinois Supreme Court would reach such a conclusion if the question were presented. Section 2-715 is silent on the question of prejudgment interest; it says nothing about a rate of interest, or whether interest should be simple or compound. Thus, for the Illinois Supreme Court to hold that prejudgment interest is statutorily available under Section 2-715, it would have to supply the rules governing those matters without legislative guidance. We have been offered no reason to believe the Illinois Supreme Court would do so, especially since the legislature has expressed its view as to the level of prejudgment interest that should be available by statute when it enacted the Interest Act. Indeed, were the Illinois Supreme Court to interpret Section

11

2-715 as providing for prejudgment interest in the way that M.S. Distributing urges here, the Illinois Supreme Court would create an inconsistency between the level of prejudgment interest that is available under Section 2-715 and that which the legislature has specifically provided for in the Interest Act. We see no reason to believe that the Illinois courts would interpret Section 2-715 to create such a conflict.

For these reasons, the Court rejects M.S. Distributing's attempt to premise an award of prejudgment interest on Section 2-715.

### III.

Finally, we address M.S. Distributing's motion for attorneys' fees and non-taxable costs. Paragraph 8 of the Distribution Agreement does not state that Mr. Jackson and Ms. Berns were undertaking to guaranty payment to the plaintiff of those fees and costs – and, M.S. Distributing does not argue otherwise. Rather, M.S. Distributing argues that it may impose those fees and costs on Mr. Jackson and Ms. Berns pursuant to the indemnity provision in Paragraph 16 of the Distribution Agreement.

Our analysis in Section II.A., above, applies with equal force here. Mr. Jackson and Ms. Berns are not "parties" to the indemnity agreement between Web and M.S. Distributing – whether it is for purposes of prejudgment interest, or for purposes of attorneys' fees and non-taxable costs. Accordingly, based on the analysis set forth above, the Court denies M.S. Distributing's motion for attorneys' fees and non-taxable costs.

## CONCLUSION

For the foregoing reasons, the Court:

1. GRANTS M.S. Distributing's bill of costs (doc. # 112), and awards costs in the amount of $7,701.79 against Ms. Berns, with $2,664.57 of that amount awarded jointly and severally against Mr. Jackson.

2. GRANTS M.S. Distributing's motion for prejudgment interest (doc. # 96) in the amount of $87,736.02, and DENIES M.S. Distributing's motion insofar as it seeks a greater amount of prejudgment interest.

3. DENIES M.S. Distributing's motion for attorneys' fees and non-taxable costs (doc. # 110).

The Court hereby enters judgment on the awards of taxable costs and prejudgment interest.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

DATE: July 30, 2003

13